Nicole Conrad, Your Honor. You can take your mask off if you want to. So, Nicole, you're going first, and you're going to do the same thing your colleagues did. You're going to have seven and three, and you've got 15 minutes, so you've got more. How are you dividing your time? We are dividing the affirmative argument. I'll speak about the serious nonpolitical crime bar and one-year bars for seven minutes, and then Ms. Manger will cover the Convention Against Torture claim for five minutes. Okay, and will you save any time for rebuttal or not? Three minutes. Out of her time or out of your time? Out of the whole time, so we'll do seven, five, three. So this gets into the previous case where there's a prayer involved, so to speak, right? Certainly, Your Honor. Okay, all right, very well, and thanks. Is it Willie, Wiley? Will, I apologize. Thank you for supervising these fine folks. So, Ms. Conrad, please proceed. May it please the Court. Nicole Conrad on behalf of Petitioner Oscar Gonzalez-Castillo. The serious nonpolitical crime bar requires a finding of probable cause. An integral red notice alone does not meet the probable cause standard. Moreover, even if a red notice alone could meet that standard, the notice against Mr. Gonzalez-Castillo cannot support the bar, even under substantial evidence review, because it is simply too unreliable. I'd like to begin with the agency's legal error of relying on an integral red notice alone to apply the bar. This case presents the question left open by the Court in Villalobosura v. Garland. No circuit has held that a red notice by itself is enough for probable cause. In fact, as this Court recognized in Villalobosura, two of its sister circuits, the first and the third, have both held that a red notice alone is not enough to arrest the subject. The Department of Justice itself takes the position that without more, a red notice is not enough for probable cause. In public guidance on its website, it states that the United States does not consider a red notice enough to arrest the subject because it does not meet the requirements for arrest under the Fourth Amendment. Let me ask you this. Is the standard we're looking at here whether the red notice provides probable cause or shows probable cause? Is that what we're looking at? Yes, Your Honor. The statute requires serious reasons for believing that the noncitizen committed a qualifying crime, and it's well established in this Court's case law, including Govey-Holder and Silva-Pereira, that the serious reasons for believing standard is tantamount to probable cause. So let's just say that, not this red notice, but just I want to understand theoretically here. So if the red notice says, you know, that this person committed a murder, and this is our, it happened on this day, and this is the person that was murdered, but say they didn't put in a statute and say that the date was not correct, something like what we have here. Would that be enough for the agency to, if you will, treat it as sufficient? No, Your Honor. It's our position that a red notice can never be sufficient for probable cause because of a reliability issue, not necessarily about how much information is in the red notice or how detailed it is. Interpol doesn't independently vet or verify red notices, and they don't require that the underlying criminal proceedings conform to any standards of due process or meet any evidentiary showing. So do red notices per se fail to meet the requirements of due process, such that basically we should write an opinion that says they don't, just really don't matter. You've got to have something separate. This doesn't matter. Is that what you're saying? Yes, Your Honor. Red notices alone cannot be sufficient to support the bar, but we don't deny that red notices may be admissible and may be considered alongside other evidence. That's exactly what this court did in Villalobos-Sura when it considered a red notice in the probable cause analysis, but only because that red notice was corroborated by an underlying contempt warrant and the noncitizen's own testimony. As this court held in Villalobos-Sura, the reliability of a red notice corresponds with the reliability of the foreign arrest warrant. So without additional information in the record, this court and the agency simply could not find a red notice reliable enough to create probable cause that the noncitizen committed a qualifying crime. And as Your Honor mentioned, the red notice in this particular case does have several deficiencies, such that even under substantial evidence review, it cannot support the application of the bar. First, the allegations in the red notice are factually impossible. The document alleges criminal activity in El Salvador occurring on January 1, 2015. It's undisputed that Mr. Gonzales Castillo was in the United States at that time, and the IJ found that he arrived on July 7, 2014. Second, the red notice in this case is insufficiently particularized to meet the probable cause standard. Unlike in Silvaparira, where the Guatemalan indictment alleged specific facts connecting the noncitizen to the qualifying crime, here there are no such specific facts. The document alleges mere MS-13 membership and, quote, strikes within the organization, end quote, but nothing in the record clarifies what those strikes entailed or Mr. Gonzales Castillo's alleged role within them. Moreover, there was no inquiry by the IJ into what Article 13 Lakat, which is the Salvadoran criminal statute cited in the red notice, actually prohibits. So it's unclear from this record what Mr. Gonzales Castillo is accused of committing in terms of a crime and whether that is a qualifying crime for purposes of the serious nonpolitical crime bar. And third, Mr. Gonzales Castillo repeatedly and consistently denied any gang affiliation or criminal activity before the IJ, and the IJ found that he testified credibly. She provided no reasoning for failing to credit his denials of the red notice, as she was required to do under this court's holding in Lin v. Gonzales. And finally, the IJ here erred by failing to make a probable cause determination. As mentioned earlier, the statute for the serious nonpolitical crime bar requires a finding of probable cause. The Eighth Circuit in Barahona v. Garland has already overturned the application of the bar, where, as here, the IJ failed to make a probable cause determination. Instead, the IJ here and the IJ in that case applied the bar based on a showing of, quote, some evidence that the bar may apply. As the Eighth Circuit identified in Barahona, this some evidence standard is lower than the probable cause standard, and so a finding of some evidence simply is not enough to apply the bar because it is not a finding of probable cause. We'd ask this court to remand on that basis as well, given that the IJ here did not make a probable cause analysis and did not make a finding of probable cause. I see that I have spoken. Okay, do you want any other questions about my colleague? Do you plan to speak at all to the one-year bar to the asylum application? I'm happy to. Because it seems to me one problem is that the arguments, most of the arguments you've made, weren't made to the agency and so can't properly be raised at this stage. Yes, Your Honor. The agency reached the merits of Mr. Gonzales-Castillo's eligibility for an exception to the one-year bar, and so those are deemed exhausted for purposes of this court's jurisdiction. Everything that might be argued with regard to the one-year bar or the issue that the agency spoke to? The agency spoke to his eligibility, and so the specific arguments within the claim of eligibility are deemed exhausted. He can change horses midstream. He can say it's because of my sexual orientation that it's going to be a problem, and he can just change it as long as he raised something? Mr. Gonzales-Castillo was pro se before the agency, so this court construes his claims liberally. Under Zhang and Aiden, Mr. Gonzales-Castillo was only required to raise the issue such that the BIA was on notice of his general claims, and he did so here. So how were they on notice that he's entitled to an exemption from one-year bar because he's gay? Mr. Gonzales-Castillo argued in his brief to the BIA that he had established his eligibility for a changed circumstance, an extraordinary circumstances exception, and that the IJ had failed. You're not answering the question. You're suggesting that any argument with regard to I'm eligible for an exception to the one-year bar based on changed circumstances will cover any other argument he might think of that suggests the changed circumstances. I think that's the question that was posed. I'm not hearing an answer other than, yeah, if you say A, argument Q qualifies as well. And where's the support for that? Your Honor, we argue that this is supported by this Court's precedent in Zhang and Aiden. The argument based on sexual orientation is a specific argument that falls under the heading of the claim which was raised, which is his eligibility for a changed circumstance or extraordinary circumstances exception. When his pleadings are construed liberally since he was pro se before the agency, the fact that they reached the merits of his eligibility and had his sexual orientation before him in addition to the red notice and the other areas that the IJ failed to develop, this is sufficient to put the BIA on notice that Mr. Gonzales-Castillo was challenging the IJ's decision related to the one-year bar. I ask my colleagues any other questions for Ms. Conrad? Very well. Now, are you going to have it so that Ms. Manger is coming up now or after the comment? Yes. Okay. Please proceed then. Good morning. Good morning, and may it please the Court. Joya Manger on behalf of Oscar Gonzales-Castillo. And I will address the Convention Against Torture claim. Mr. Gonzales-Castillo was tortured in El Salvador by both the government and gangs. Since escaping to the U.S., his likelihood of torture upon deportation has only increased as he is now subject to a red notice and gangs continue to look for him.  Are you claiming that because of the police having beat him before, that that's past persecution, right? Past torture, Your Honor, yes. And not torture. And you're claiming the government essentially conceded that? Should it have conceded that? What happened? Your Honor, the record compels the conclusion that Mr. Gonzales-Castillo suffered past torture. And just to highlight some of the past torture by the government, they beat him severely every day on his way to school for an entire year when he was 17. They took him into custody, hit him with rifles in the face, leaving a scar. And they threatened him at gunpoint with imminent death, and they threatened to turn him over to an extermination group. That is along the lines of what this court found in Xochitl Jimenez to be past torture. How about that one? Yes. There, the applicant was also held at gunpoint, beaten severely, and threatened with death. I guess what I'm challenged with here is, ironically, I don't think the IJA found that that was past torture. Correct. Why not? I mean, being beaten in the face, being beaten up day after day after day by an instrumentality of the government seems to me to be past torture. Can you explain any reason why it would not be? No, Your Honor. We agree with that. And under the circumstances, that sets up a presumption, right? Correct. And that's where we have the challenge here. Your client is saying basically, you know, it's not, you know, I'm going to have the same thing all over again. The government says no, and the government thinks it has fulfilled, it has rebutted the presumption. What's your best argument that the government has failed to rebut the presumption? Your Honor, the government has pointed to no evidence in the record that Mr. Gonzalez-Castillo would not be tortured in El Salvador. And, in fact, the record shows that Salvadoran officials target deportees with red notices and often capture them in the airport. And this is similar to this court's recent decision in Soto Soto, where an applicant with a red notice was found at a high likelihood of future torture because the government had tortured her in the past and had issued an arrest warrant and red notice to bring her back and subject her to the same torture. So what do we do in a situation where, as here, the IJ did not find past torture? But if we find there was, and if we find the government didn't address or try to rebut it because it didn't think there was a presumption, what do we do with that? Your Honor, this court can look to the past torture as the primary indicator of future torture, and we argue that this record in itself compels a grant of CAT, so we would ask that you direct a grant to the agency. But if this court weren't inclined to go that far, it would at least warrant a remand for the IJ to consider past torture, for the agency to consider the past torture as it relates to future torture. And additionally, the other factors such as the red notice and Mr. Gonzalez-Castillo's sexual orientation. I see that I'm into our rebuttal time, so unless there are further questions. Do you want to save the rest of your time then for rebuttal? Yes, please, Your Honor. Very well. Thank you. Thank you. Mr. Mack from the DOJ, please. Good morning, Your Honor, and may it please the court, Greg Mack for the Attorney General. The court's red notice cases indicate that when there is a red notice and some other additional evidence that serves as the predicate for probable cause, then the court finds that probable cause exists. We, of course, don't have that in this particular case, but the court, of course, has to still write a decision in resolving this case. And let me suggest three foundational principles and a holding. First, let the statutory burden of proof and standard of review work as intended, and petitioners should not be allowed to invert the burden of proof. Second, petitioner bore the burden of demonstrating that a preponderance of the evidence, his eligibility for asylum, including that the mandatory bars to asylum did not apply. Whether petitioner met that burden is a factual question. Third, the standard of review for the agency's resolution of factual questions is whether the record compels a contrary conclusion. And for the holding, the court should hold when juxtaposed against petitioner's categorical denial, the Interpol red notice provides sufficient evidence for the agency to conclude that probable cause existed and that the agency's decision is not patently unreasonable and therefore the record does not compel the conclusion that there's a lack of probable cause to deny petitioner eligibility for asylum. The Department of Justice in other contexts appears to take the position that a red notice does not establish probable cause. That was a startling argument in the opening brief that I didn't see a response to. Well, we did respond to it, Your Honor. The petitioner's brief pointed out that the DOJ policy statement was that probable cause isn't sufficient for a U.S. arrest warrant. We're not trying to arrest petitioner. Petitioner is advancing the claim that he's eligible for asylum. Well, you're trying to deport him. The probable cause standard is the same, isn't it? And so how is it that the red notice is sufficient for purposes of establishing probable cause leading to deportation but is not sufficient for an arrest warrant in the United States? I don't understand the difference. It's not related to deportation. It's related to petitioner's request for relief under the immigration laws that he should be granted a right under the immigration laws for asylum. So when the DOJ says you cannot use the red notice for an arrest warrant for a U.S. arrest, nobody from the U.S. is trying to arrest petitioner or use the red notice as probable cause to arrest him. He is advancing the claim that he's eligible for asylum to avoid deport or removal, and therefore he's trying to advance the point that this red notice isn't sufficient. So the probable cause point— Makes this red notice any stronger with regard to probable cause than it would be for the issuance of an arrest warrant. I mean, I just don't see how probable cause flows from the red notice. Well, probable cause flows from the red notice because what we have, as I suggested with the holding, is a categorical denial with respect to the red notice, and petitioner has the burden approved before the agency to show that there's a lack of probable cause, and before this court he has to show that the record compels— Wait a minute. You're saying that the person who is charged, in effect, has the burden to show that there's no probable cause? Isn't that the government's burden? It is not, Your Honor. Petitioner has the burden— Let's move into the criminal context because this is the analogy. You're saying that when someone is arrested that it's the burden of the defendant to show that there wasn't probable cause, or it's the responsibility of the government to show that there was probable cause? And that's the point. This isn't criminal. It is the government's burden. Well, it isn't criminal, but as my colleague has pointed out here, the analogy is this is showing probable cause. That's what the cases seem to show about the red notice. Neither of us seem to find such in this particular red notice, but I'm frankly startled with the idea that somehow it's, in this case, the petitioner's responsibility to, if you will, disabuse the government of its allegation that there is probable cause. It's the charging entity here. It brought this evidence here. Doesn't it have some responsibility to show that there's some bona fides to this red notice in order to take advantage of it? The analogy is broken with respect to the criminal claim by the statute. 8 U.S.C. section 1229A C4A says that the noncitizen has the burden of showing eligibility for asylum. It is his burden to show that there's a lack of probable cause. To the court's question as to whether the government has some sort of burden with respect to showing bona fides, certainly the regulation— I understand that there are certain things that the petitioner has to show with respect to asylum, but in this case you've come up with some evidence that's a bar altogether, and you seem to be saying that whatever you said, I mean, whether in red notice you could say that, you know, this person many years ago raped his sister. You have no evidence at all, but just claim that that was true. Is that enough to establish a bar here? An immigration judge could make that finding, but of course that's not the case here, Your Honor. We have the red notice. To the court's question, doesn't the government have some sort of burden to show bona fides? The immigration judge and the board worked through that with this case. As the board's decision in matter of WERB indicates, there is an initial burden of production on the DHS. Wasn't that case overturned? Certainly. If we were in the 8th Circuit, I would certainly say the government should take another look at this case because Barahona certainly controls. But our view on Barahona is it was wrong the day it was decided, and certainly in our brief we cited to the Supreme Court's decision in Pareda and this court's own decision in Miramarina that the burden of proof is on the noncitizen to show eligibility for asylum. What Barahona did was— It's lost in the 8th Circuit. It's lost in the 3rd Circuit. It's lost in the 1st Circuit. I don't know if I'm missing any, but it just doesn't square with our understanding as to what's the adequate basis for, in this case, a conclusion that this petitioner is subject to the serious nonpolitical crime bar based on what amounts to pretty vague allegations that happen to get contained in a red notice coming out of a country where our State Department's country reports leave us to question the reliability. I mean, are we supposed to say, yep, that's enough for probable cause? You don't seem to be saying that. You seem to be saying, yeah, that's enough to make petitioners disprove probable cause. And that seems the whole thing is upside down. Why should we go down that road, particularly with this red notice, which doesn't clearly identify a crime as I understand it. It basically says he's part of a gang, offers up one specific date that doesn't seem to be tied into any actual event. It happens to be a January 1st, a date where it is generally conceded petitioner was not in El Salvador, was in this country, so hard to see exactly how he can be tagged with probable cause for having committed a crime on the date that's identified in the red notice. So either in general or in this particular case, why should we have any confidence at all that there is in fact evidence of probable cause that he's committed a serious non-political crime? And I think, Your Honor, the immigration judge does concede and gets into the point that a specific role is not noted in the red notice, but apparently in El Salvador, the red notice cites to Article 13 Ligat, which says that if you are associated with the gangs in El Salvador, that's enough for at least an arrest warrant in this case.  But the larger point is, is to be sure. If, as I started out in the beginning, if there's a red notice and some additional evidence that serve as predicate for probable cause, most courts have said, yes, we find that probable cause exists. We don't have that. Has any court said that a red notice by itself is enough? Because that seems to be what we have here. Not at all. No court has ever said that. That's the beauty of the common law system. We get to argue cases and the court has to write an opinion. And we're suggesting to the court, and that's where I started at the beginning, the petitioner had the burden of proof before the agency. The DHS had the initial burden of production to offer up the red notice, which it did. And then the statute says the noncitizen has the burden of demonstrating a lack of probable cause. And the courts review. And certainly, if you were an immigration judge, if I were an immigration judge, you might find 48 out of 100 immigration judges that say they would break the other way. But the court's job is to say. So, counsel, if we conclude that this particular red notice doesn't come close to establishing probable cause, that it's internally consistent, that there's no express crime alleged, there's no statute alleged, he was out of the country at the time it allegedly occurred. He then says, I'm not a member of the gang, I wasn't there, this is false. Isn't that enough to overcome, in this case, to overcome the effect of the red notice? No, it doesn't. Because that doesn't say that the agency's decision was patently unreasonable. The immigration judge took all that into account and came down on the other end. Again, this is my word. If the red notice is absurd, it's just totally inconsistent, makes no sense. Notwithstanding the fact that the idea is that I really like this red notice, if I conclude to the contrary and he says none of these things is true, don't we come down the other way? We're the court of appeal. We actually get to overrule IJs. Did you know that? Absolutely, and that's what I keep saying. You have to find the record compels that conclusion. Exactly. But if we find that the red notice in this case is utterly inconsistent, does not begin to comply with any standard of probable cause or notice, and the petitioner in this case denies each and every aspect of it that is material, that's enough. Insofar as this aspect is concerned, isn't that enough for us to rule in, at least in this case, that the red notice is not enough to establish the bar? As the court frames it, certainly. That's the way you would have to come out in this case if you find that the record compels in conclusion that the red notice is absurd or inconsistent. I'm not going to say that that's not the standard of review here, but that is your standard of review. All I'm saying is what the agency did was not patently unreasonable. The immigration judge looked at these arguments. It had a categorical denial with respect to the red notice, and petitioner's burden was to show that the bar did not apply, and he did not prove that there was a lack of probable cause. Then certainly the court, as you framed it, if the court finds that the record compels a contrary conclusion, that is the court's conclusion. So we don't dispute that that's the court's role here. All we're saying is the agency did the work, and out of 100 immigration judges, you might find some breaking the other way, but that's the beauty of the court system is you've got to find that the record compels a contrary conclusion. All we're saying in our brief in here is the record doesn't compel a contrary conclusion. What do we do with the reasoning of the other circuits that my colleague has referred to? I think there are four circuits that have basically held that red notices are essentially valueless for purposes of the bar. Should that reasoning have any impact on our own reasoning? No, Your Honor. I don't think it creates a hard split with those other circuits. Like I said, Barahona was wrong the day it was decided, and certainly with the Supreme Court saying, as we cite in our brief in Pareto, that the burden of proof is on the noncitizen to show eligibility for asylum. Barahona was wrongly decided the day it was decided, and certainly wrong after the Supreme Court's decision in Pareto. In addition, the complicating factor with Barahona was that they had a question about whether the charges still existed in the foreign country. So you wouldn't have a hard split if the court decided in the other way. Let me just say, if you reverse the immigration judge on the probable cause issue, that means the court has to send the case back to the agency or for a full-blown hearing on the merits because the immigration judge didn't reach them. Can I shift the subject just for one second? As you may have heard, I was discussing with one of the advocates here about the role of the police in beating Mr. Gonzalez Castillo. There was no contrary evidence, and I think the IJ believed that testimony. Given that fact, doesn't that establish past torture? And this was an agency of the government. No, Your Honor. I think the immigration judge reasonably concluded that the torture wasn't severe in this particular case. A guy gets beaten in the face with a rifle butt, gets beaten up almost every day, allegedly for almost a year. That's not torture? It's not torture, Your Honor. And the immigration judge looked at that evidence and said it's not severe. She certainly found the petitioner was credible. But the immigration judge's conclusion was this was not severe mistreatment and therefore didn't qualify for torture. If we believe that our case law would substantiate that it was sufficient enough to beat past torture, what does that do to this case? And the government didn't really try to refute that. It just basically said it wasn't torture, right? But you didn't respond to any presumption of future torture, right? No, because the immigration judge and either the board applied a presumption in this case. So as the court knows under SEC v. Chenery, we have no opportunity to argue beyond what the agency resolved, Your Honor. And I see you in my waiting seconds. I just want to say the petitioner is absolutely correct. The government miscited a case in its brief, the low result decision. We cited it as a published decision. I just want to confirm that petitioner is absolutely correct. It's an unpublished decision, Your Honors. Very well. Thank you. Thank you very much. Any other questions by my colleagues? I think not. So you've got a little bit of rebuttal time. Do you want to use that, please? A few points on rebuttal, Your Honor. First, to clarify the law related to the serious nonpolitical crime bar, this court has held in via lobo sura that the government does have the initial burden of introducing evidence related to the bar. Significantly, via lobo sura was decided after Pareto. Pareto does not control in this case because it analyzed a specific statute governing cancellation of removal. That statute does not include a probable cause requirement. And to the note about the probable cause requirement, this court is correct that the probable cause inquiry is the same in the arrest context as it is here. This court consistently looks to criminal case law, including Marilyn v. Pringle and Illinois v. Gates, to define the contours of the probable cause inquiry and what probable cause requires. Additionally, the red notice is the only evidence on this record even potentially supporting the application of the bar here. If this court does not find that the red notice rises to probable cause, there is simply nothing else to create probable cause in this case. And it's clear, therefore, that the IJ's decision was not supported by substantial evidence, given the deficiencies of red notices generally and of this particular red notice. To return to your honors questions about the one-year bar as well, I wanted to bring some car sites about exhaustion. Specifically, on car 194 and 195, Mr. Gonzales-Castillo both stated that he had identified exceptional circumstances and material change circumstances and also argued that the IJ erred in not considering the entirety and totality of his testimony and evidence and all relevant factors. Significantly, the court did not consider the red notice against Mr. Gonzales-Castillo, which he learned about for the first time in February 2020, as a potential change circumstance. Your time is up, but I have one additional question. Let's assume, arguendo, that we don't agree with you about asylum, that he's not dealt with the one-year issue adequately. But if we find that there was past torture and that the government didn't rebut the presumption of future torture, does he still have a withholding claim that survives? Yes, Your Honor. Mr. Gonzales-Castillo does have a withholding claim because the one-year bar does not apply to withholding of removal. The court would still need to reach the serious non-political crime bar on the withholding of removal. Assuming that was gone. Yes, Your Honor. But the one-year bar is only for asylum. Okay. Any other questions by other of my colleagues? Very well. Thanks again to these fine law students. Thank you, Your Honor. And thanks to Ms. Will, right, for supervising them. We appreciate it.
judges: CLIFTON, SMITH, Reiss